UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
Xene Corporation,

                Plaintiff,

     - against -

Nouryon B.V., *et al.*,

               Defendants.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
22-CV-2850 (PKC) (MMH)

PAMELA K. CHEN, United States District Judge:

     Plaintiff Xene Corporation ("Xene" or "Plaintiff") commenced this action on May 16, 2022 against the Nouryon Defendants[1]; Akzo Nobel, Inc ("Akzo Nobel"); Diadem Sports; and Lantor Composites AB.[2] (Compl., Dkt. 1, ¶ 1.) Plaintiff alleged in its Complaint that the Nouryon Defendants and Akzo Nobel induced Diadem Sports, Lantor Composites AB, non party RTP Imagineering Plastics, and similarly situated John Does, to violate 35 U.S.C. § 271(g) by importing, offering for sale, selling, or using within the United States products containing "thermoplastic microspheres" or "microcapsules"—with trade name "Expancel" and "Masterbatch"—which, Plaintiff alleged, "is made by a process claimed" by two of Plaintiff's patents. (Compl., Dkt. 1, ¶¶ 13–15, 95.)

---

[1] The Court has previously defined the term "Nouryon Defendants" to include Nouryon B.V. (f/k/a Akzo Nobel), Nouryon USA LLC, Nouryon Pulp and Performance Chemicals AB, Nouryon Salt LLC, Nouryon US Holding 1 Inc., Nouryon US Holding 2 Inc., Nouryon US Holding 4 Inc., Nouryon Chemicals LLC (f/k/a Akzo Nobel Chemicals Inc.), and Nouryon Pulp and Performance Chemicals LLC. (*See* Dismissal Order, Dkt. 29, at 1.)

[2] The Court previously dismissed *sua sponte* Defendants Diadem Sports and Lantor Composites AB from this action based on Plaintiff's failure to serve them. (*See* Dismissal Order, Dkt. 29, at 2 n.2 (citing Fed. R. Civ. P. 4(m)).)

On September 12, 2024, the Court granted Defendants' motions to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(2) as to Defendant Nouryon B.V., and improper venue under Rule 12(b)(3) as to all other Defendants. (*See* Dkt. 29 ("Dismissal Order"), at 18.) Presently before the Court is Plaintiff's motion for reconsideration of the Dismissal Order with respect to the Court's finding that venue was improper for the Nouryon Defendants pursuant to a forum-selection clause in a Confidentiality Agreement between the parties. Plaintiff does not seek reconsideration of the Court's decision to dismiss its claims against either Akzo Nobel or Nouryon B.V. For the reasons stated herein, Plaintiff's reconsideration motion is denied.

## BACKGROUND

### I. Relevant Factual Background

The Court assumes the parties' familiarity with the facts of this case and therefore recites only those facts relevant to this decision.[3] Plaintiff Xene Corporation is a New York corporation and owns two patents: U.S. Patent No. 10,500,447 ("'447 Patent") and No. 8,328,666 ("'666 Patent") (together, the "Asserted Patents"). (Compl., Dkt. 1, ¶¶ 2, 4, 45–46.) The '666 Patent, issued on December 11, 2012, is for a "resin and fiber composite racket," such as a sports racket. (*Id.* ¶¶ 47, 51.) The '447 Patent, issued on December 10, 2019, describes a method through which "microspheres" are used to manufacture "fiber composites," which are in turn used to make various products in the fields of aviation, automobiles, transportation, and marine industries. (*Id.* ¶¶ 32–35, 45.) Put simply, the '447 Patent claims "a method of using microcapsules for composite manufacturing" while the '666 Patent claims "a product containing composite[s made] using

---

[3] A detailed description of the factual and procedural history of this case can be found in the Dismissal Order. (*See* Dismissal Order, Dkt. 29, at 3–5).

2

microcapsules." (*Id.* ¶ 49.) The applications for both patents were filed in 2010. (*Id.* ¶ 47.) In its Complaint, Plaintiff alleged, *inter alia*, that the Nouryon Defendants induced third parties to violate 35 U.S.C. § 271(g) by "importing into the United States, offering to sell, selling, and/or using within the United States the Microspheres product, which is made by a process claimed in the ['444] Patent." (*Id.* ¶ 95.)

      A.      **The Confidentiality Agreement**

Though Plaintiff did not bring any breach-of-contract claims against the Nouryon Defendants, the Complaint nevertheless alleged violations of a "joint venture . . . for the purpose of marketing and selling microspheres to the composites industry" that Plaintiff had entered into with "Defendants' predecessor Akzo Nobel"[4] around 2014 "after Plaintiff filed [patent] applications worldwide in 2010." (*Id.* ¶¶ 37–38.) Pursuant to these agreements, Plaintiff allegedly shared trade secrets with the Nouryon Defendants regarding the marketing of microspheres to the composites industry for the purpose of jointly benefiting or sharing profits from the venture. (*Id.* ¶ 40.) The Nouryon Defendants, in return, "agreed not to sell unauthorized products to the industries covered by [the Asserted Patents] and [to] otherwise not . . . expropriate Xene's proprietary practice." (*Id.* ¶ 39.) Plaintiff asserted in the Complaint that it had been cut out by the Nouryon Defendants from sharing in any profits from the business and received none of the remuneration that it was due from sales in the composites market. (*Id.* ¶¶ 41–42.)

---

[4] Though the joint venture was allegedly with Akzo Nobel, Plaintiff maintained in its Complaint and opposition brief that Akzo Nobel was succeeded by "Defendants," defined as Nouryon B.V. and its affiliates. (*See* Complaint, ¶ 37; *see also* Dismissal Order at 1 n.1 (explaining the dispute between the parties regarding whether Nouryon B.V. was formerly known as Akzo Nobel).) The Court thus construes Plaintiff's allegations regarding the joint venture with Akzo Nobel as stating that it had an agreement with the Nouryon Defendants.

In briefing their dismissal motion, the Nouryon Defendants submitted a Confidentiality Agreement ("Agreement") between Plaintiff and the Nouryon Defendants signed in November 2021. (*See* Confidentiality Agreement, Dkt. 22, at ECF 3.)[5] The Nouryon Defendants claim in their dismissal motion—but not in their affidavits—that this was the "sole agreement" they were aware of between the parties.[6] In resolving the dismissal motion, the Court therefore construed the allegations in Plaintiff's Complaint regarding the "joint venture" that existed between Plaintiff and the Nouryon Defendants "by virtue of agreements between them commencing in 2014," (Compl., Dkt. 1, ¶ 37), as essentially referring to the valid Agreement between them.

The stated "Purpose" of the Agreement was "Expancel Microspheres Use-[]Composite Applications and Masterbatch Forms." (Confidentiality Agreement, Dkt. 22, at ECF 2.) Under the Agreement, Xene was the party disclosing confidential information to Nouryon Pulp & Performance Chemicals LLC. (*Id.*) The forum selection clause in the Agreement requires "[a]ll

---

[5] When deciding a motion to dismiss for improper venue, courts may consider materials outside the pleadings. *See, e.g.*, *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 26 (2d Cir. 1997). The Court therefore previously considered the Confidentiality Agreement, attached to the Nouryon Defendants' opening brief. (Dkt. 22.) Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[6] There was thus a factual dispute between the parties regarding whether the Agreement offered by the Nouryon Defendants is the same "joint venture" referenced by Plaintiff in its Complaint. Typically, "in evaluating a motion to dismiss based on a forum selection clause, a district court . . . relies on pleadings and affidavits, but must conduct an evidentiary hearing to resolve disputed factual questions in favor of the defendant." *Martinez v. Bloomberg LP*, 740 F.3d 211, 216–17 (2d Cir. 2014). But here, even though Plaintiff had an opportunity to respond to the Nouryon Defendants' argument about the Agreement being the "joint venture" referenced in the Complaint, Plaintiff did not ask for an evidentiary hearing, nor did it allege that the Agreement was invalid in any way. (*See* Dismissal Order at 8–9); *see also TradeComet.com LLC v. Google, Inc.*, 435 Fed. App'x. 31, 33–34 (2d Cir. 2011) (concluding evidentiary hearing unnecessary to determine enforceability of forum selection clause where plaintiff did not submit evidence controverting acceptance of relevant contract). In any event, the Agreement "supersede[d] all prior and contemporaneous . . . agreements" between the parties regarding the same subject matter. (Confidentiality Agreement, Dkt. 22, ¶ 6.6.)

4

disputes arising out of or relating in any way to performance under [the] Agreement" to be resolved in the courts of the state of Delaware. (*Id.*) Moreover, the Agreement's definition of "confidential information" includes "patent applications," (*id.* at ECF 3), and the Agreement explicitly contemplates lawsuits related to the filing of such applications, specifically stating that if the Nouryon Defendants use confidential information from Xene to file their own patent applications, the Nouryon Defendants cannot then sue Xene for violating the resultant patents, (*id.* ¶ 4.2).

### B. Dismissal Order

In their motion to dismiss for improper venue, the Nouryon Defendants argued that Plaintiff's claims fell squarely within the scope of the forum selection clause in the Agreement because:

> Plaintiff allege[d] that (1) Plaintiff filed the patent applications leading to issuance of the asserted patents in 2010 ([Compl.], Dkt. 1, ¶ 37), (2) Plaintiff and . . . [the] Nouryon Defendants entered into "agreements" concerning Plaintiff's alleged inventions described in those patent applications and Expancel (the accused product) (*id.* ¶¶ 37–40), and (3) one or more of the Nouryon Defendants violated those agreements and infringed the asserted patents by selling Expancel "in breach of the agreements" (*id.* ¶ 40).

(Dkt. 41 ("Defs.' Opp'n") at 6; *see also* Dkt. 19 at 9–10.) In response, Plaintiff stated that it was not aware of the Agreement (which was contravened by Plaintiff's own signature on the Agreement) and that the "only purpose" of the Agreement was for "Nouryon to inspect and examine Xene's New Masterbatch Form which has far fewer additives than Nouryon's Masterbatch form." (Dkt. 20 at 15–16.) Plaintiff further argued in a conclusory fashion that "[t]his patent infringement litigation case does not 'arise out of or relate to' the disclosure made by Xene to Nouryon of their proprietary Masterbatch form, which Nouryon solicited for examination, even though it is highly relevant in proving that Defendants were well-aware of Xene's patents and technology." (*Id.*)

5

The Court looked to cases within the Second Circuit and concluded that Plaintiff had failed to allege any facts giving rise to a reasonable inference that this action lay outside the scope of the Agreement:

> [T]his litigation is directly related to the Nouryon Defendants' Masterbatch form. In its own Complaint, Plaintiff alleges that "[u]pon information and belief, [Defendants'] thermoplastic product Expancel and Masterbatch are the same or substantially identical to [the] Microspheres in the Asserted Worldwide patents." (Compl., Dkt. 1, ¶ 18.) Plaintiff cannot now disavow or deviate from the core of its own infringement claims and maintain in good faith that the Nouryon Defendants' Masterbatch is unrelated to this litigation.

(Dismissal Order at 8–9.)  Further, the Court held that Plaintiff had not met its burden to show that enforcement of the forum selection clause in the Agreement would be unreasonable or unjust. (*Id.* at 9.)  Accordingly, the Court dismissed Plaintiff's claims against the Nouryon Defendants based on improper venue.

## II. Relevant Procedural Background

Plaintiff commenced this action on May 16, 2022.  (*See* Compl., Dkt. 1.)  The Nouryon Defendants and Akzo Nobel filed separate motions to dismiss Plaintiff's Complaint, and the Court granted the motions on September 12, 2024.  (*See* Dismissal Order, Dkt. 29.)  On September 20, 2024, Plaintiff filed a motion to alter or amend a judgment under Rule 59(e) and a motion for reconsideration under Local Civil Rule 6.3 "on grounds that the Court made a clear error of law in overlooking Federal Circuit precedent," as to the Court's decision to dismiss Plaintiff's claims against all Nouryon Defendants, except Nouryon B.V.  (*See* Dkt. 32 ("Pl's. Mem."), at ECF 1.)[7]

---

[7] This motion was timely filed under Rule 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.").  Further, this Court retains jurisdiction to rule on the motion notwithstanding Plaintiff's Notice of Appeal filed on October 2, 2024.  See *Basciano v. Lindsay*, No. 07-CV-421 (NGG) (RML), 2008 WL 1700442, at *1 (E.D.N.Y. Apr. 9, 2008) ("[W]here, as here, the notice of appeal is filed while a timely filed Rule 59(e) motion is pending, the trial court retains jurisdiction over the post-judgment motion, and the

Plaintiff did not seek reconsideration of the Court's dismissal of its claims against Nouryon B.V. or Akzo Nobel. (*See generally* Dkt. 32.) The Nouryon Defendants filed a response to the reconsideration motion on October 18, 2024. (Defs.' Opp'n at 11.) Plaintiff filed a reply on November 1, 2024. (Dkt. 43 ("Pl.'s Reply").) The Nouryon Defendants filed a sur-reply on November 12, 2024. (Dkt. 45 ("Defs.' Sur-Reply").)

## LEGAL STANDARD

A motion for reconsideration pursuant to Local Civil Rule 6.3 "is the proper vehicle for bringing to the Court's attention matters it may have overlooked in its initial ruling or [O]rder." *Pall Corp. v. 3M Purification, Inc.*, Nos. 97-CV-7599 (PKC), 03-CV-92 (PKC), 2015 WL 5009254, at *1 (E.D.N.Y. Aug. 20, 2015). The standard governing a motion for reconsideration under Local Civil Rule 6.3 is "identical" to the standard applicable to a motion to amend or alter a judgment under Rule 59(e). *Arnold v. Geary*, 981 F. Supp. 2d 266, 268–69 (S.D.N.Y. 2013), *aff'd*, 582 F. App'x 42 (2d Cir. 2014).

A motion to alter a judgment pursuant to Rule 59(e) "may be granted 'only if the movant satisfies the heavy burden of demonstrating an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 10 F. Supp. 3d 460, 475 (S.D.N.Y. 2014) (quoting *Hollander v. Members of the Bd. of Regents of the Univ. of the State of N.Y.*, 524 Fed. App'x 727, 729 (2d Cir. 2013)). The Second Circuit has noted that it is "'well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga*

---

notice of appeal does not become effective until entry of an order disposing of the Rule 59(e) motion.").

7

*Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).  Rather, "[t]he standard for granting [a Rule 59 motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

"When deciding issues in a patent case, a district court applies the law of the circuit in which it sits to nonpatent issues and the law of the Federal Circuit to issues of substantive patent law."  *Shaf Int'l, Inc. v. First Mfg. Co.*, No. 20-CV-1242 (PKC) (LGD), 2024 WL 4309142, at *5 (E.D.N.Y. Sept. 26, 2024) (citing *In re Cambridge Biotech Corp.*, 186 F.3d 1356, 1368 (Fed. Cir. 1999)) (additional citations omitted).  An "issue that is not itself a substantive patent law issue is nonetheless governed by Federal Circuit law if the issue pertains to patent law, if it bears an essential relationship to matters committed to [the] exclusive control [of the Federal Circuit] by statute, or if it clearly implicates the jurisprudential responsibilities of [the Federal Circuit] in a field within its exclusive jurisdiction."  *In re Omeprazole Pat. Litig.*, 490 F. Supp. 2d 381, 399–400 (S.D.N.Y. 2007), *aff'd*, 281 F. App'x 974 (Fed. Cir. 2008), *and aff'd on other grounds*, 536 F.3d 1361 (Fed. Cir. 2008) (citing *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (en banc in relevant part)) (internal citations and quotations omitted).

## DISCUSSION

Plaintiff's arguments on its motion for reconsideration relate entirely to the forum selection clause of the Agreement between Plaintiff and the Nouryon Defendants.  Though neither party previously raised these arguments, Plaintiff now contends that the controlling law for this case should be the law of the Federal Circuit, which—Plaintiff alleges—has held that a forum selection clause cannot dictate venue in patent infringement cases.  (*See* Pl.'s Mem. at 4–8.)  Defendants counter that the Federal Circuit cases cited by Plaintiff are inapposite and that the Court should

instead interpret the forum selection clause using Delaware law, pursuant to the choice-of-law provision in the Agreement. (Defs.' Opp'n at 4.)

The Court notes that Plaintiff, in its opposition to the Nouryon Defendants' motion to dismiss, chose not to raise any arguments about whether Federal Circuit law should be controlling when enforcing the forum selection clause, instead simply arguing that Plaintiff "had no knowledge that [the Agreement] was ever signed by Nouryon until February 2023." (Dkt. 20 at 15.) Thus, Plaintiff in effect forfeited the argument that it seeks to raise now, i.e., that Federal Circuit law is controlling in determining the effect and scope of the forum selection clause, and the Court could deny reconsideration solely for this reason. *See Analytical Surveys, Inc*, 684 F.3d at 52 (explaining that a motion for reconsideration is not a vehicle for presenting a case under new theories). Out of an abundance of caution, however, the Court proceeds to the merits of Plaintiff's argument and finds it unavailing.

### A.   The Forum Selection Clause Is Applicable Here

"Whether venue is proper under § 1400(b) is an issue unique to patent law and is governed by Federal Circuit law." *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1012 (Fed. Cir. 2018) (citation omitted). But "[a] forum-selection clause that applies to an infringement dispute can operate as a waiver of the protections of § 1400(b) venue since it shows consent to litigate in a specific forum." 5 Annot. Patent Digest (Matthews), § 36:152.40 (2020); *see, e.g.*, *Sundesa, LLC v. IQ Formulations, LLC*, No. 19-CV-6467 (AB) (MAA), 2020 WL 8125541, at *2 (C.D. Cal. Aug. 19, 2020) (holding that a forum selection clause can operate as a waiver of § 1400(b)); *FCX Solar, LLC v. FTC Solar, Inc.*, No. 21-CV-0548 (ADA), 2021 WL 4953912, at *8 (W.D. Tex. Oct. 25, 2021) (same). To determine whether a forum selection clause is valid and enforceable, a court must:

> [(1)] determine whether the clause was reasonably communicated to the party resisting enforcement; [(2)] classify the clause as either mandatory or permissive; . . . and [3] determine whether the claims and parties involved in the suit are subject to the forum selection clause. If the forum [selection] clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. The final step requires the Court to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

*Mauro Pennisi, Inc. v. Philip Morris USA, Inc.*, No. 08-CV-3551 (SJF) (WDW), 2008 WL 11449332, at *4 (E.D.N.Y. Sept. 4, 2008) (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383–84 (2d Cir. 2007)) (internal citations and quotation marks omitted).

Here, there is no plausible allegation that the clause was not reasonably communicated to Plaintiff. As the Court previously noted, "[t]hough Plaintiff claims that it had never laid eyes on the signed Agreement until February 2023, it does not allege that the CEO's signature on the Agreement was forged, or that the documents were substituted after he signed them." (Dismissal Order at 7–8.) Further, Plaintiff "[did] not provide any support that the Nouryon Defendants regularly engage in such [fraudulent] 'practice,' nor [did] it allege any facts that would lead the Court to reasonably infer that the Nouryon Defendants did not in fact sign the contract on November 17, 2021, as is shown in the Agreement." (*Id.* at 8.) Absent such allegations, the first step of the *Phillips* test is satisfied. *See S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 708–09 (2d Cir. 2010) (finding first step of *Phillips* test met when "[n]othing in the record indicate[d]," and no party argued, that the forum selection clause was "not reasonably communicated" to the party resisting its enforcement).

The Second Circuit has stated that "[i]n answering the *interpretive* questions posed by parts two and three of the four-part framework, . . . we normally apply the body of law selected in an otherwise valid choice-of-law clause." *Martinez*, 740 F.3d at 217–18. There is no dispute here,

10

as to the second prong, that the forum selection clause of the Agreement is mandatory. In considering the third prong, though the Court could have applied Delaware law in its analysis, "[w]here the parties' briefs do not rely on the law chosen in the agreement, the court may instead interpret the forum-selection clause under federal law and general contract principles." *George V Eatertainment S.A. v. Elmwood Ventures LLC*, No. 22-CV-08047 (JLR), 2023 WL 2403618, at *3 (S.D.N.Y. Mar. 8, 2023); *see also Donnay USA, Ltd. v. Donnay Int'l S.A.*, 705 F. App'x 21, 24 n.3 (2d Cir. 2017) (affirming interpretation of a forum selection clause under "general contract principles" because "the parties did not brief British law before the district court"). Here, neither party briefed Delaware law before the Court in their motion to dismiss papers. The Court was permitted to, and did, rely on federal law and general contract principles to determine the scope of the forum selection clause.

But even if the Court had applied Delaware law, the outcome would have been the same. This is because Delaware law construes the language in the forum selection clause—"arising out of or relating in any way to"—broadly. *See CA, Inc. v. Ingres Corp.*, C.A. No. 4300 (VCS), 2009 WL 4575009, at *46 n.290 (Del. Ch. Dec. 7, 2009), *aff'd*, 8 A.3d 1143 (Del. 2010) (finding that "[l]anguage such as 'relate to' or 'arise out of'" in a forum selection clause "is to be read broadly"); *Elf Atochem N.A. v. Jaffari*, 727 A.2d 286, 294–95 (Del. 1999) (holding that claims under a separate contract were all subsumed under the forum selection clause in the LLC Agreement, which broadly covered any claim "related to" the LLC Agreement). The broad wording of the forum selection clause, combined with the similarly broad purpose of the Agreement ("Expancel Microspheres Use-[]Composite Applications and Masterbatch Forms"), the fact that "confidential information" includes "patent applications," and the fact that patent-related suits are explicitly contemplated in at least one section of the Agreement collectively indicate that the claims in this

11

litigation come within the scope of the forum selection clause of the Agreement. (*See generally* Confidentiality Agreement, Dkt. 22, at ECF 2–7.)

Finally, as to the fourth prong, "federal law should be used to determine whether an otherwise mandatory and applicable forum clause is *enforceable* . . . , i.e., [when assessing] step four in [the] analysis." *Phillips*, 494 F.3d at 384; *see also DarkPulse, Inc. v. FirstFire Glob. Opportunities Fund, LLC*, No. 23-78, 2024 WL 1326964, at *1 (2d Cir. Mar. 28, 2024) ("The fourth prong of this analysis is governed by '[f]ederal common law.'"). The Court disagrees with Plaintiff's contention that the correct federal law to be applied is Federal Circuit law. *See Prods. Res. Grp., L.L.C. v. Martin Pro., A/S*, 907 F. Supp. 2d 401, 415 (S.D.N.Y. 2012) (applying Second Circuit law for the fourth prong of the *Phillips* test in a patent case); *George V Eatertainment S.A.*, 2023 WL 2403618, at *11 (same). The Court, in its Dismissal Order, thus correctly applied Second Circuit law in assessing whether Plaintiff had met its burden of proof to rebut the presumptive enforceability of the forum selection clause.

Even if Federal Circuit law were controlling here, Plaintiff's reliance on two Federal Circuit decisions to argue that a forum selection clause cannot dictate venue in patent infringement cases—namely *Radio Systems v. Accession, Inc*, 638 F.3d 785 (Fed. Cir. 2011) and *Kannuu Pty Ltd. v. Samsung Elecs. Co.*, 15 F.4th 1101 (Fed. Cir. 2021)—is unavailing. Plaintiff, for example, states that the *Radio Systems* court "held that a Forum Selection Clause in a Confidentiality Agreement is inapplicable in a patent case, unless the Confidentiality Agreement explicitly references patent litigation." (Pl.'s Mem. at 4.) But this misrepresents the court's holding, which stated that "[b]ecause this action did not arise out of the subject matter of the confidential disclosure agreement, the forum selection clause of that agreement has no effect on the question of personal jurisdiction." *Radio Sys.*, 638 F.3d at 793. Where, as here, the Court has found that

12

the subject matter of the confidentiality agreement *is* sufficiently related to the litigation, the holding of *Radio Systems* does not apply.

Plaintiff's reliance on *Kannuu* is similarly misplaced.  Plaintiff argues that *Kannuu* stands for the proposition that "Confidentiality Agreements, unlike patent-licensing agreements, do not relate to patent infringement, and thus Forum Selection Clauses in Confidentiality Agreements are not applicable to patent-infringement cases." (Pl.'s Mem. at 7.)  However, in *Kannuu*, the Federal Circuit found that the forum selection clause contained in the Non-Disclosure Agreement signed by the parties did not encompass a petition for *inter partes* review.[8]  But here, unlike the facts in *Kannuu*, the Agreement does explicitly contemplate intellectual property rights and patent litigation, (*see* Confidentiality Agreement, Dkt. 22, ¶¶ 4.1–4.2), and Plaintiff's own Complaint alleges conduct that places this dispute within the scope of "agreements" with Nouryon Defendants "commencing in 2014," (Compl., Dkt. 1, ¶¶ 30, 37–44).  For these reasons, the Court rejects Plaintiff's characterizations of the holdings in *Radio Systems* and *Kannuu*, as well as Plaintiff's argument that they are controlling, or even applicable, in this case.[9]

---

[8] "Inter partes review is a trial proceeding conducted at the [Patent Trial and Appeal Board] to review the patentability of one or more claims in a patent only on a ground that could be raised under [35 U.S.C.] §§ 102 or 103, and only on the basis of prior art consisting of patents or printed publications." United States Patent and Trademark Office website, https://www.uspto.gov/patents/ptab/trials/inter-partes-review (last viewed November 25, 2024.)

[9] For the same reasons, the Court also rejects Plaintiff's argument—which it raises for the first time in its reply brief—that the Nouryon Defendants' counsel violated professional ethics rules by not mentioning *Radio Systems* and *Kannuu* to the Court.  In any event, as discussed, because both cases are distinguishable, the Nouryon Defendants' counsel neither erred nor violated any ethical rule by not citing to them.

### B.  Plaintiff's Other Arguments Are Foreclosed

Plaintiff puts forward a number of other arguments, but they fail because they cannot be raised upon a motion for reconsideration.  This includes Plaintiff's arguments that (1) the forum selection clause is inapplicable because it "only mentions the state courts of Delaware, and does not mention the U.S. District Court for the District of Delaware," (Pl.'s Mem. at 32), and (2) the Exception clause in the Agreement makes the forum selection clause inapplicable "[b]ecause the patents were publicly known in November 2021," (*id.* at 3).[10]  Plaintiff's efforts constitute a naked attempt to litigate this case using new arguments.  And as previously noted, a motion for reconsideration is "not a vehicle for . . . presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple."  *Analytical Surveys, Inc*, 684 F.3d at 52.  In contrast to Plaintiff's Federal Circuit argument, this time the Court finds this procedural defect sufficient to reject Plaintiff's other new arguments, and does not address them on the merits.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration is denied.  Accordingly, this matter remains closed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: December 2, 2024
       Brooklyn, New York

---

[10] Indeed, Plaintiff's assertion that it raised this argument before the Court in its opposition to the motion to dismiss, (Pl.'s Reply at 1), is factually inaccurate.  (*See generally* Dkt. 20 at 15–16.)